UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

U.S.A. FAMOUS ORIGINAL RAY'S LICENSING  :
CORP.,

                     Plaintiff,           :           09 Civ. 5517 (RMB) (AJP)

                 -against-          :    **REPORT AND RECOMMENDATION**

TISI'S PIZZA AND PASTA INC., et al.,     :

              Defendants.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Richard M. Berman, United States District Judge:**

          Plaintiff U.S.A. Famous Original Ray's Licensing Corporation ("Ray's") sued Tisi's Pizza and Pasta Inc. for using Ray's' marks, without permission or authorization, "on the signage at [their] store," "when answering the telephone," "in connection with [Tisi's] listings in telephone directories" and "on advertisements and promotional materials." (Dkt. No. 1: Comp. ¶¶ 1, 3, 25-28.) On October 5, 2009, Judge Berman granted Ray's a default judgment including injunctive relief against Tisi's, and referred the matter to me for an inquest as to damages, attorneys' fees and costs. (Dkt. No. 6: 10/6/09 Referral; Dkt. No. 7: 10/6/09 Default Judgment.) Plaintiff submitted papers on the inquest seeking Tisi's profits, treble damages, attorneys' fees and costs. (Dkt. No.13: Mangano Aff. ¶¶ 2, 9, 24; Dkt. No. 12: Sullivan Aff. ¶¶ 3, 5-11.) Defendants have not submitted any

H:\OPIN\RAY'S PIZZA

opposition papers, and the deadline for doing so has long passed.  (See Dkt. Nos. 8 & 9: Scheduling Orders.)

For the reasons stated below, the Court should award Ray's $78,000 in damages, $7,782 in attorneys fees and $633.63 costs.

## FACTS

Where, as here, "'the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998) (Carter, D.J. & Peck, M.J.) (quoting C. Wright, A. Miller & M. Kane, Federal Practice & Procedure: Civil 3d § 2688 at 58-59 (3d ed. 1998)).

Ray's is a forty year old "family owned business" that operates and licenses others to operate approximately seventeen restaurants serving pizza and "Italian food specialties" in and around New York City.  (Dkt. No. 1: Compl. ¶¶ 12-14, 17-18, 20-21; Dkt. No. 13: Mangano Aff. ¶¶ 3, 21.)  Ray's owns a "family of registered trademarks incorporating the word RAY'S for restaurant services, including the following:  (A) RAY'S PIZZA . . . ; (B) FAMOUS RAY'S PIZZA . . . ; (C) FAMOUS ORIGINAL RAY'S PIZZA . . . ; and (D) FAMOUS ORIGINAL RAY'S PIZZA EST. 1964 . . . ."  (Compl. ¶¶ 14, 23 & Ex. A: Trademark Registrations.)  Ray's also owns a registered service mark incorporating the Ray's logo with the crown design.  (Compl. ¶ 15 & Ex. A: Service Mark Registration.)  Ray's has "extensively advertis[ed] and promot[ed]" its trademarks,

3

causing "the general public to associate quality restaurant services with the RAY'S marks." (Compl. ¶ 17.)

Tisi's is a "relatively small" restaurant that serves pizza, salads and pastas, and provides free delivery to its customers. (Compl. ¶ 25; Mangano Aff. ¶¶ 12, 14, 15 & Ex. C: Tisi's Menu.) Tisi's is located in a "high volume" area near Stuyvesant Town in Manhattan, "within 12 blocks" of a Ray's restaurant. (Compl. ¶¶ 2, 25; Mangano Aff. ¶¶ 12, 21.) Beginning before April 22, 2009 and up until October 23, 2009, Tisi's used Ray's' marks, without Ray's' permission or authorization, "on the signage at [their] store," "when answering the telephone," "in connection with [their] listings in telephone directories" and "on advertisements and promotional materials." (Compl. ¶¶ 25-28, 32; Mangano Aff. ¶¶ 22-23; Dkt. No. 12: Sullivan Aff. ¶ 3.)

On "April 22, 2009 and May 7, 2009, Ray's notified [Tisi's] that [Tisi's] use of the mark and name 'RAY'S PIZZA' infringe[d] on Ray's valuable trademark rights, and demanded that [Tisi's] immediately terminate all use of these marks and names." (Compl. ¶ 32.) Tisi's did not stop infringing Ray's marks (Compl. ¶ 33) until Judge Berman entered the default judgment and permanent injunction on October 6, 2009. Ray's asserts that Tisi's infringement was willful. (Compl. ¶¶ 33, 48, 68.)

"[O]ver the past several months,"  Ray's' "principal" Agatha Mangano[1] visited Tisi's four times.  (Mangano Aff. ¶¶ 1, 13.)  Mangano observed "a pizza counter[,] a bench and two chairs inside" Tisi's.  (Mangano Aff. ¶ 14.  )  When she visited Tisi's during the week of October 26, 2009, she observed one employee "behind the counter" and four or five patrons in the restaurant. (Mangano Aff. ¶ 16.)  Mangano estimated that Tisi's "total revenue per week is approximately $20,000" based on its small size, its location and her "personal observation."  (Mangano Aff. ¶ 18.) Mangano further estimated that Tisi's total weekly costs are approximately $17,000 taking into account Tisi's rent for the small restaurant, the five to six employees that Tisi's probably employs to work two shifts and "additional costs associated with kitchen items and delivery."  (Mangano Aff. ¶¶ 17, 19.) "Therefore [Mangano] estimate[d] the net profits for Tisi's restuarant to be $3,000 per week."  (Mangano Aff. ¶ 20.)

The complaint asserts claims for violation of Section 43(a) of the Lanham Act (Compl. ¶¶ 36-44), false designation of origin under the Lanham Act (Compl. ¶¶ 45-53), and claims under New York law (Compl. ¶¶ 54-80).

As noted above, on October 6, 2009, Judge Berman granted Ray's a default judgment and permanent injunction against Tisi's, and referred the matter to me for an inquest as to damages, attorneys' fees and costs.  (Dkt. No. 6: 10/6/09 Referral; Dkt. No. 7: 10/6/09 Default Judgment.)

---

[1]     Mangano, who has "well over 20 years of experience in [the] industry," "oversee[s] the operational aspects of several Ray's pizza restaurants [and] . . . Ray's trademark compliance and enforcement program."  (Mangano Aff. ¶¶ 1, 21.)  Mangano is the daughter of Ray's' founder.  (Mangano Aff. ¶ 21.)

5

## ANALYSIS

The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "'as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment.'"  Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)).

## I.   TRADEMARK DAMAGES

Ray's seeks to recover Tisi's' profits, estimated at $3000 per week, for the period between April 22, 2009 (Ray's' first cease and desist letter) and October 23, 2009 (the date of the default judgment injunction).  (Dkt. No. 12: Sullivan Aff. ¶ 3; Dkt. No. 13: Mangano Aff. ¶¶ 9, 20, 23-24.).[2]

Under the Lanham act, "[t]o recover an infringer's profits plaintiffs must show that an infringer acted with willful deception, in addition to showing (1) the defendant's unjust enrichment; (2) the plaintiff's damages, if any, from the infringement; or (3) that an accounting for profits is necessary to deter future willful infringement." Chloe v. Zarafshan, 06 Civ. 3140, 2009 WL 2956827 at *5 (S.D.N.Y. Sept. 15, 2009) (citing George Basch Co. v. Blue Coral, Inc., 968 F.2d

---

[2]    Ray's requests $105,000 based on its calculation that there were thirty five weeks between April 22, 2009 and October 23, 2009.  (See Mangano Aff. ¶ 24; Sullivan ¶ 3.)  In fact, there are twenty-six weeks and two days between April 22, 2009 and October 23, 2009.

1532, 1537 (2d Cir.), cert. denied, 506 U.S. 991, 113 S. Ct. 510 (1992).[3/]   If a plaintiff has

successfully made such a showing, a plaintiff is "entitled, . . . subject to the principles of equity, to

recover (1) defendant's profits, . . ."  15 U.S.C. § 1117(a); accord, e.g., Sporty's Farm L.L.C. v.

Sportsman's Market, Inc., 202 F.3d 489, 500 (2d Cir. 2000); Chloe v. Zarafshan, 2009 WL 2956827

at *5.  "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant

must prove all elements of cost or deduction claimed."  15 U.S.C. § 1117(a); accord, e.g., Am.

Honda Motor Co. v. Two Wheel Corp., 918 F.2d 1060, 1063 (2d Cir. 1990); Louis Vuitton S.A. v.

Spencer Handbags Corp., 765 F.2d 966, 973 (2d Cir. 1985); Chloe v. Zarafshan, 2009 WL 2956827

at *5; GAKM Res. LLC v. Jaylyn Sales Inc., 08 Civ. 6030, 2009 WL 2150891 at *4 (S.D.N.Y. July

20, 2009) (Lynch, D.J. & Katz, M.J.); AW Indus., Inc. v. Sleep Well Mattress, Inc., No. 08-CV-

3969, 2009 WL 485186 at *3 (E.D.N.Y. Feb. 26, 2009).   Nevertheless, where the court finds

defendant's "profits [are] either inadequate or excessive[,] the court may in its discretion enter

judgment for such sum as the court shall find to be just, according to the circumstances of the case."

15 U.S.C. § 1117(a); accord, e.g., George Basch Co. v. Blue Coral, Inc., 968 F.2d at 1537 ("[T]he

statute's invocation of equitable principles as guideposts in the assessment of monetary relief vests

the district court with some degree of discretion in shaping that relief.  Nevertheless, that discretion

---

[3/]      See also, e.g., Banff, Ltd. v. Colberts, Inc., 996 F.2d 33, 35 (2d Cir. 1993); Gidatex, S.r.L.
v. Campaniello Imps., Ltd., 82 F. Supp. 2d 136, 141 (S.D.N.Y. 2000); 5 J. Thomas
McCarthy, McCarthy on Trademarks & Unfair Competition § 30:59 (2009 ed.) ("Under the
modern view, three goals or rationales can support an award of defendant's profits in cases
of trademark infringement or unfair competition:  (1) as a measure of plaintiff's damages;
(2) if the infringer is unjustly enriched; or (3) if necessary to deter a willful infringer from
doing so again.").

must operate within legally defined parameters.") (citation omitted); <u>GAKM Res. LLC</u> v. <u>Jaylyn Sales Inc.</u>, 2009 WL 2150891 at *4 (quoting <u>George Basch Co.</u>); <u>AW Indus., Inc.</u> v. <u>Sleep Well Mattress, Inc.</u>, 2009 WL 485186 at *3 (quoting <u>George Basch Co.</u>).  Furthermore,

> if "the actual sales cannot be precisely determined, the court may resolve any doubts against the defendant in calculating profits, particularly if the uncertainty is due to the defendant's inadequate record-keeping or failure to produce documentary evidence." It bears noting, however, that some reasonable basis for computation has to be used, even though the calculation may only be approximate.

<u>Chloe</u> v. <u>Zarafshan</u>, 2009 WL 2956827 at *5 (citation omitted); <u>see</u>, <u>e.g.</u>, <u>GAKM Res. LLC</u> v. <u>Jaylyn Sales Inc.</u>, 2009 WL 2150891 at *6 (Plaintiff's estimates of Defendant's profits "are reasonable and have some evidentiary support.  Any imprecision in calculating Defendants' profits is the fault of Defendants, who failed to participate in this litigation."); <u>AW Indus., Inc.</u> v. <u>Sleep Well Mattress, Inc.</u>, 2009 WL 485186 at *4 ("The amount requested is not excessive and, moreover, it is defendant who is to blame for the inability to calculate an exact figure."); <u>Century 21 Real Estate LLC</u> v. <u>Paramount Home Sales, Inc.</u>, No. 06-CV-2861, 2007 WL 2403397 at *4 (E.D.N.Y. Aug. 20, 2007) (finding plaintiff's "speculative" method of calculating an award pursuant to 15 U.S.C. § 1117(b) "reasonable and appropriate" because "[t]he amount requested is not excessive and it is defendants who are to blame for the inability to calculate an exact figure"); <u>Phat Fashions LLC</u> v. <u>Blue Max Corp.</u>, 01 Civ. 3933, 2005 WL 1221838 at *2 (S.D.N.Y. May 2, 2005) ("In the absence of any information from [defendant] on costs, and because [defendant] has not cooperated in discovery, the Court finds that these estimated sales are a fair indicator of profits.").

Here, Tisi's has defaulted and by virtue of its default, is deemed to be a willful infringer.  (See pages 1-2 above.)  E.g., Chloe v. Zarafshan, 2009 WL 2956827 at *7 ("Willfulness may be established by a party's default because an innocent party would presumably have made an effort to defend itself."); Malletier v. Carduci Leather Fashions, Inc., 04 Civ. 497, - F. Supp. 2d -, 2009 WL 2568428 at *3 (S.D.N.Y. Aug. 19, 2009) ("Here, by virtue of its default, [defendant] has admitted [plaintiff]'s allegation that it acted knowingly and intentionally or with reckless disregard or willful blindness to [plaintiff]'s rights."); GAKM Res. LLC v. Jaylyn Sales Inc., 2009 WL 2150891 at *6 (noting that for purposes of § 1117(b), "where a defendant defaults, that may be taken as evidence of willful infringement"); AW Indus., Inc. v. Sleep Well Mattress, Inc., 2009 WL 485186 at *4 (Defendant "has defaulted in this case, which deems it a willful infringer."); Rodgers v. Anderson, 04 Civ.1149, 2005 WL 950021 at *2 (S.D.N.Y. Apr. 26, 2005) ("In this case, defendants have defaulted and by virtue of their default, are deemed to be willful infringers.") (Peck, M.J.); Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) ("By virtue of the default, the [defendant]s' infringement is deemed willful, . . ."); 3 Anne Gilson Lalonde & Jerome Gilson, Gilson on Trademarks § 14.03(9)(a)(ii)(G) (2009 ed.) ("The failure to appear may itself suggest willfulness or bad faith.").

Mangano used her "personal observation of the [Tisi's] restaurant[,] [her] years of experience overseeing the operation[al] aspects of pizza restaurant[s]" and her "familiar[ity] with the volume of business in [the] area" to estimate Tisi's' profits between April 22, 2009 and October 23, 2009.  (See page 4 n.1 above.)  Mangano calculated that Tisi's' revenue was

9

approximately $20,000 per week and its costs were approximately $17,000 per week.  (See page 4

above.)  "Therefore [Mangano] estimate[d] the net profits for Tisi's restaurant to be $3,000 per

week."  (See page 4 above.)

     Although this method of calculating damages is somewhat speculative, I find it to

be reasonable and appropriate, in light of Mangano's knowledge and the cases cited above.  Thus,

Ray's is entitled to damages of $78,000 ($3,000 a week times 26 weeks).

     Ray's also seeks treble damages pursuant to 15 U.S.C. § 1117(a)[4] (Sullivan Aff. ¶ 5;

Mangano Aff. ¶ 24), which provides in pertinent part:

> In assessing damages the court may enter judgment, according to the circumstances
> of the case, for any sum above the amount found as actual damages, not exceeding
> three times such amount. If the court shall find that the amount of the recovery based
> on profits is either inadequate or excessive the court may in its discretion enter
> judgment for such sum as the court shall find to be just, according to the
> circumstances of the case. Such sum in either of the above circumstances shall
> constitute compensation and not a penalty.

___

[4]    Ray's has not sought treble damages pursuant to 15 U.S.C. § 1117(b), which provides:

> (b) Treble damages for use of counterfeit mark
>
> In assessing damages under subsection (a) for any violation of section 1114(1)(a) of
> this title or section 220506 of Title 36, in a case involving use of a counterfeit mark
> or designation (as defined in section 1116(d) of this title), the court shall, unless the
> court finds extenuating circumstances, enter judgment for three times such profits or
> damages, whichever amount is greater, . . .

     While the complaint's fact section refers to 15 U.S.C. § 1114(1) (Compl.
¶ 34), Ray's did not assert any cause of action pursuant to that section, but only asserted
Lanham Act § 43(a) claims, i.e., 15 U.S.C. § 1125(a) (Compl. ¶¶ 36-53).  Thus, Ray's is not
entitled to treble damages pursuant to § 1117(b).

(Emphasis added.)  Because § 1117(a) "does not explicitly provide for trebling an award of defendant's profits," but only permits trebling of plaintiff's "'actual damages,'" courts cannot treble an award of defendant's profits.  E.g., Nutting v. RAM S.W., Inc., 69 Fed. Appx. 454, 458 (Fed. Cir. 2003) ("The statute permits a court to award up to three times the plaintiff's 'actual damages' only; this language does not apply to an award of defendant's profits.");  Thompson v. Haynes, 305 F.3d 1369, 1380 (Fed. Cir. 2002) ("[W]e find that the district court erred in its assessment of exemplary damages. In its final judgment, the court added [defendant]'s profits to [plaintiffs'] lost sales and corrective advertising costs, and trebled the resulting total. While 15 U.S.C. § 1117(a), which governs damages for violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), authorizes the trebling of [plaintiffs'] damages, the court's identical treatment of [defendant]'s profits does not comport with the language of the statute. . . .  By the terms of the statute, 'damages' are to be treated separately from 'profits.'  As for damages, the court may award up to three times actual damages, depending on the circumstances of the case.  As for profits, however, the court is not authorized to award up to three times the amount proved.");  Dialogo, LLC v. Bauza, 549 F. Supp. 2d 131, 137 (D. Mass. 2008) ("the amount to be trebled under [§ 1117(a)] of the Lanham Act cannot include lost profits.").  Because Ray's seeks to recover Tisi's' profits rather than Ray's' damages, Ray's is not entitled to trebled damages pursuant to § 1117(a).

To the extent § 1117(a) allows the Court to "in its discretion enter judgment for such a sum as the court shall find to be just," the Court may do so only if it "find[s] that the amount of the recovery based on profits is either inadequate or excessive."  15 U.S.C. § 1117(a).  Ray's has not

presented any evidence that an award of $78,000 in Tisi's' profits – equal to a month's worth of Tisi's' gross profit and half a year's worth of its net profit – is inadequate.  See, e.g., Nutting v. RAM S.W., Inc., 69 Fed. Appx. at 458 ("[T]he district court did not here find that recovery based on [defendant]'s profits would be inadequate to compensate" plaintiff.); 3 Anne Gilson Lalonde & Jerome Gilson, Gilson on Trademarks § 14.03(3)(c) (2009 ed.) ("If the assessment of actual damages is sufficient to compensate the plaintiff for its loss, the court should not enhance the damage award.").

## II.   ATTORNEYS' FEES AND COSTS

### A.   Attorneys' Fees

Ray's seeks $7,782 in attorneys' fees for 24.6 hours of work and supports its request with attorney Jonathan C. Sullivan's affidavit and his law firm's computerized billing records showing the services performed, the time spent and the amount billed.  (See Dkt. No. 12: Sullivan Aff. ¶¶ 6-12 & Ex. A: Billing Spreadsheet; Dkt. No. 13: Mangano Aff. ¶ 24.)

### 1.   The Legal Standard for Determining Attorney's Fees in Trademark Infringement Cases

The Court may award attorneys' fees to the prevailing party in "exceptional" cases under 15 U.S.C. § 1117(a).  The allegations in the complaint, along with defendants' default, are sufficient to justify the award of attorneys' fees to plaintiff here.  See, e.g., 15 U.S.C. § 1117(a); Chloe v. Zarafshan, 06 Civ. 3140, 2009 WL 2956827 at *7 (S.D.N.Y. Sept. 15, 2009) ("Deliberate and willful infringement can render a case 'exceptional' and thus support an award of attorney's fees."); GAKM Res. LLC v. Jaylyn Sales Inc., 08 Civ. 6030, 2009 WL 2150891 at *7 (S.D.N.Y. July 20, 2009) (Lynch, D.J. & Katz, M.J.) ("Because Defendants willfully infringed Plaintiffs' trademarks,

Plaintiffs are entitled to reasonable attorneys' fees."); AW Indus., Inc. v. Sleep Well Mattress, Inc., No. 08-CV-3979, 2009 WL 485186 at *4 (E.D.N.Y. Feb. 26, 2009) ("The allegations in the instant complaint, along with [defendant]'s default, are sufficient to justify an award of attorneys' fees in this case."); Guardian Life Ins. Co. of Am. v. Does, 05 Civ. 6616, 2006 WL 3008078 at *2 (S.D.N.Y. Oct. 23, 2006) (Peck, M.J.), report & rec. adopted, 2007 WL 103022 (S.D.N.Y. Jan 11, 2007); Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc., 03 Civ. 2132, 2006 WL 728407 at *7 (S.D.N.Y. Mar. 21, 2006) ("[T]he defendant's [trademark] infringement has been deemed willful by virtue of its default in this action," thus justifying awarding reasonable attorneys' fees under 15 U.S.C. § 1117(a).); Phat Fashions LLC v. Blue Max Corp., 01 Civ. 3933, 2005 WL 1221838 at *2 (S.D.N.Y. May 2, 2005) (Defendant "has failed to present any evidence [on the inquest] to contradict the assertions in the complaint [of deliberate and willful infringement], and it has used marks with similarities to plaintiff's mark.[] I find that its willful conduct justifies an award of attorney's fees."); Christian Dior Couture, S.A. v. Fred's Int'l Handbags, 95 Civ. 6265, 2002 U.S. Dist. LEXIS 778 at *14 (S.D.N.Y. Jan. 17, 2002) ("[P]erforce of [defendant]'s failure to appear and defend this action, a finding of wilfulness by the Court is permitted. . . . Therefore, an award to [plaintiff] of the attorney's fees it incurred in prosecuting this action against [defendant] is justified."); 3 Anne Gilson Lalonde & Jerome Gilson, Gilson on Trademarks § 14.03[9][a][ii][B], [G] (2009 ed.).

Traditionally, "[i]n determining a fee award, the typical starting point is the so-called lodestar amount, that is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'"  Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007) (citing Hensley v.

Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983)).  "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. . . . The district court . . . should exclude from this initial fee calculation hours that were not 'reasonably expended.' . . . Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."  Hensley v. Eckerhart, 461 U.S. at 433-34, 103 S. Ct. at 1939-40.[5/]  Particularly in awarding statutory attorneys' fees, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry.  There remain other considerations that may lead the district court to adjust the fee upward or downward."  Hensley v. Eckerhart, 461 U.S. at 434, 103 S. Ct. at 1940; see also, e.g., Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 186 (2d Cir. 2008) ("[T]he lodestar method involved two steps: (1) the lodestar calculation; and (2) adjustment of the lodestar based on case-specific considerations.").

Last year, however, the Second Circuit acknowledged that the lodestar's "value as a metaphor has deteriorated to the point of unhelpfulness," and abandoned use of the term due to longstanding confusion regarding its proper application, while leaving the methodology essentially

---

[5/]    The Second Circuit requires contemporaneous time records as a prerequisite for awarding attorneys' fees.  E.g., N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983).

the same.[6/]  Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at

190.  The Second Circuit held that:

> [T]he better course – and the one most consistent with attorney's fees jurisprudence
> – is for the district court, in exercising its considerable discretion, to bear in mind all
> of the case-specific variables that we and other courts have identified as relevant to
> the reasonableness of attorney's fees in setting a reasonable hourly rate.  The
> reasonable hourly rate is the rate a paying client would be willing to pay.  In
> determining what rate a paying client would be willing to pay, the district court
> should consider, among others, the Johnson factors;[7/] it should also bear in mind that
> a reasonable, paying client wishes to spend the minimum necessary to litigate the
> case effectively.  The district court should also consider that such an individual might
> be able to negotiate with his or her attorneys, using their desire to obtain the
> reputational benefits that might accrue from being associated with the case.  The
> district court should then use that reasonable hourly rate to calculate what can
> properly be termed the "presumptively reasonable fee."

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 190 (emphasis

added).[8/]

---

[6/]    The Second Circuit added:  "While we do not purport to require future panels of this court
to abandon the term – it is too well entrenched – this panel believes that it is a term whose
time has come."  Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,
522 F.3d at 190 n.4.

[7/]    The twelve Johnson factors are:  (1) the time and labor required; (2) the novelty and
difficulty of the questions; (3) the level of skill required to perform the legal service properly;
(4) the preclusion of employment by the attorney due to acceptance of the case; (5) the
attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time
limitations imposed by the client or the circumstances; (8) the amount involved in the case
and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the
"undesirability" of the case; (11) the nature and length of the professional relationship with
the client; and (12) fee awards in similar cases.  Johnson v. Ga. Highway Exp., Inc., 488 F.2d
714, 717-19 (5th Cir. 1974).

[8/]    See also, e.g., Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (Arbor
                                                                        (continued...)

"[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees."  Hensley v. Eckerhart, 461 U.S. at 440, 103 S. Ct. at 1943; accord Farrar v. Hobby, 506 U.S. 103, 114, 113 S. Ct. 566, 574 (1992); Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 2008 WL 3255130 at *15; Kassim v. City of Schenectady, 415 F.3d 246, 253-54 (2d Cir. 2005); Pino v. Locascio, 101 F.3d 235, 237 (2d Cir. 1996).

"There is no precise rule or formula for making these determinations."  Hensley v. Eckerhart, 461 U.S. at 436, 103 S. Ct. at 1941.  "The district court has broad discretion in" determining if time was reasonably expended and "need not . . . scrutinize[] each action taken or the time spent on it," Aston v. Sec'y of Health & Human Servs., 808 F.2d 9, 11 (2d Cir. 1986), but the Court has a duty to discount any "[e]xorbitant, unfounded, or procedurally defective fee applications" and ensure the final award is reasonable.  Comm'r, I.N.S. v. Jean, 496 U.S. 154, 163, 110 S. Ct. 2316, 2321 (1990).

## 2.    Application of the Legal Standard to Ray's' Attorneys' Fee Request

John A. DeMaro and Jonathan Sullivan of Ruskin Moscou Faltischek, P.C., a Uniondale, New York law firm, represent Ray's.  (Dkt. No. 12: Sullivan Aff. ¶¶ 1, 7.)  DeMaro is a partner and the firm's intellectual property department chair; he has twenty-seven years of

---

[8/]    (...continued)
Hill relied on the substance of both the "'lodestar' approach" and the "Johnson" approach to "set forth a standard that [the Second Circuit] termed the 'presumptively reasonable fee.'"); Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 151-52 (2d Cir. 2008); Supreme Oil Co. v. Abondolo, 568 F. Supp. 2d 401, 409 (S.D.N.Y. 2008) ("In the Second Circuit, fee awards are determined by the 'presumptively reasonable fee' method.") (citing Arbor Hill); Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 536-37 (S.D.N.Y. 2008).

experience, including "extensive experience in all manner of trademark disputes and litigation." (Sullivan Aff. ¶¶ 7-8.)  For DeMaro's work, Ray's seeks $400 per hour, DeMaro's billing rate. (Sullivan Aff. ¶ 8.)  Sullivan is a ninth year litigation associate, who has "represented clients in complex trademark infringement disputes at both the trial and appellate levels."  (Sullivan Aff. ¶ 9.) For Sullivan's work, Ray's seeks $295 per hour, Sullivan's billing rate.  (Sullivan Aff. ¶ 9.)

       I find these hourly rates reasonable.  They are commensurate with (if not lower than) the rates that attorneys in Manhattan with comparable experience charge and the rates that Southern and Eastern District judges have approved in other intellectual property cases.[2/]  See, e.g., Tu v. TAD Sys. Tech. Inc., No. 08-CV-3822 , 2009 WL 2905780 at *10 (E.D.N.Y. Sept. 10, 2009) (In copyright and trademark case, court approved $375 per hour for partners, $250 per hour for senior associates, and $150 per hour for junior associates); Motorola, Inc. v. Abeckaser, No. 07-cv-3963, 2009 WL 2568529 at *4, 6 (E.D.N.Y. Aug. 5, 2009) (In a trademark case, where plaintiffs requested $375 to $480 hourly rate for an associate specializing in intellectual property with approximately nine years of experience and $450 to $505 hourly rate for a partner with twenty years experience in anti-counterfeiting, the court awarded fees at a rate reduced by fifteen percent.), report & rec. adopted on this ground, modified on another ground, 2009 WL 2568526 (E.D.N.Y. Aug. 19, 2009);

---

[2/]     The Second Circuit recently held in Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 175 (2d Cir. 2009), that, "when faced with a request for an award of higher out-of-district rates, a district court must . . . apply a presumption" in favor of awarding prevailing hourly rates within the district.  Simmons does not affect this Court's citation of Eastern District hourly rates awards because Ray's does not seek "higher out-of-district" rates and Eastern District hourly rates typically are lower than Southern District hourly rates.

GAKM Res. LLC v. Jaylyn Sales Inc., 08 Civ. 6030, 2009 WL 2150891 at *7-8 (S.D.N.Y. July 20, 2009) (Lynch, D.J. & Katz, M.J.) (In trademark infringement case, approving $600 to $650 hourly rate for intellectual property attorneys at a national law firm with twenty to thirty years experience, and $525 hourly rate for an attorney at a national law firm with eleven years experience.); Margel v. E.G.L. Gem Lab Ltd., 04 Civ. 1514, 2009 WL 302069 at *8 (S.D.N.Y. Feb. 6, 2009) (Partner's "hourly rates of $550.00 in 2005 and $585.00 in 2006, though high, are reasonable in light of his fifteen to sixteen years' experience and the fact that he practices intellectual property law at a large Manhattan law firm."); Microsoft Corp. v. Computer Care Ctr., Inc., No. 06-CV-1429, 2008 WL 4179653 at *14-15 (E.D.N.Y. Sept. 10, 2008) ($500 hourly rate for a partner who had specialized in intellectual property litigation since 1994 and $385 hourly rate for an associate, "while on the high side, [fell] within the range awarded in New York City" for intellectual property cases.); Entral Group Int'l., LLC v. Sun Sports Bar Inc., No. 05-CV-4836, 2007 WL 2891419 at *10 (E.D.N.Y. Sept. 28, 2007) (approving hourly rate of $560 for a partner and $340-360 for associates in copyright infringement action).

        Ray's requests attorneys' fees for 24.6 hours.  (Dkt. No. 12: Sullivan Aff. Ex. A: Billing Spreadsheet.)  Ray's submitted documentation showing the dates and the amount of time DeMaro and Sullivan spent on particular tasks, as well as descriptions of each task, including researching Tisi's use of Ray's' mark, drafting cease and desist letters, drafting the complaint, drafting the order for default judgment, and preparing for and attending two court conferences.  (Billing Spreadsheet.)  I find Sullivan and DeMarco's hours expended to be reasonable.

Accordingly,  Ray's should be awarded the requested $7,782 in attorneys' fees.

**B.    <u>Costs</u>**

Ray's seeks $633.63 in costs and disbursements. (<u>See</u> Dkt. No. 12: Sullivan Aff. ¶ 11 & Ex. A: Billing Records.)

"The Lanham Act allows prevailing parties to recover the costs of the action.  <u>See</u> 15 U.S.C. 1117(a). Generally '[o]ut of pocket litigation costs are [ ] recoverable if they are necessary for the representation of the client.'" <u>GAKM Res. LLC</u> v. <u>Jaylyn Sales Inc.</u>, 08 Civ. 6030, 2009 WL 2150891 at *10 (S.D.N.Y. July 20, 2009) (Lynch, D.J. & Katz, M.J.) (quoting <u>Tri-Star Pictures, Inc.</u> v. <u>Unger</u>, 42 F. Supp. 2d 296, 306 (S.D.N.Y.1999).

The billing spreadsheet identified the following "[d]isbursements:"  $375 in "Court Filing Fees," .84 in "In-House Copies," $62.50 in "Messenger Service" and $195.29 in "Computerized Research Westlaw."  (Billing Records.)  "These are the types of routine costs awarded to prevailing parties in trademark and copyright infringement actions." <u>GAKM Res. LLC</u> v. <u>Jaylyn Sales Inc.</u>, 2009 WL 2150891 at *10; <u>accord</u>, <u>e.g.</u>, <u>M. Lady, LLC</u> v. <u>AJI, Inc.</u>, 06 Civ. 0194, 2009 WL 1150279 at *10 (S.D.N.Y. Apr. 29, 2009) (awarding, <u>inter alia</u>,  reproduction costs and service of process fees); <u>Ahava (USA), Inc.</u> v. <u>J.W.G., Ltd.</u>, 286 F. Supp. 2d 321, 325 (S.D.N.Y. 2003) (awarding filing fee and computerized research charges in trademark infringement action).

## **CONCLUSION**

For the reasons set forth above, the Court should award Ray's $78,000 in damages, $7,782 in attorneys fees and $633.63 costs, for a total of $86,415.63.

## **FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard M. Berman, 500 Pearl Street, Room 650, and to my chambers, 500 Pearl Street, Room 1370.  Any requests for an extension of time for filing objections must be directed to Judge Berman (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988);

McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72.

DATED:     New York, New York
              December 1, 2009

                               **Andrew J. Peck**
                               United States Magistrate Judge

Copies to:     Jonathan C. Sullivan, Esq.
              Tisi's Pizza and Pasta, Inc. (Regular & Certified Mail)
              Judge Richard M. Berman

H:\OPIN\RAY'S PIZZA